Good morning, Your Honors. This is Bill Petrini from Mattel Philips & Philips for Appellant Mattel. Before we get started, I wanted to make a request. I have product samples. Mr. Fox for Jada has objected to it. Our position is it is part of the record. There were photographs. I thought it would be helpful to illustrate the relatedness of the products. So with your permission, I will bring them up. If not, I'll leave them in the back. Did you let counsel know before this morning? No, this morning I did. What? This morning I let him know. You should let him know. Have maybe a written request filed with the court. Just not come in and say, here they are. Because as soon as you walk through the doors of this courtroom, you become paranoid. Maybe so. In any event, I think you know the history of the case from the briefs in terms of this was a two-part case where Mattel was coming in with an answer and counterclaims as to its Hot Wheels mark. And Hot Rigs is the mark at issue for Jada Toys. In response to motions for summary judgment, the district court granted Jada's motion for summary judgment as to liability or no liability as to the Hot Rigs claims. And in doing so, what the district court did, and I think this is the biggest mistake that the district court did, was it looked at only one factor of the sleek craft factors. It looked at similarity of the marks and it looked at nothing else. And in doing that, it ignored other Ninth Circuit precedent that relates to the similarity of the marks. For example, entrepreneur media states that if the products are highly related or competitive, then you need less similarity. Levi Strauss and OAG, Ninth Circuit cases, both of them say, the stronger the trademark, the less similarity that you need. We never got a chance to have the district court look at that because he stopped at similarity. And I think he made mistakes as to the analysis of the similarity. He did not look at the entireties of the mark. He bifurcated them. He weighed the differences more than the similarities, which the district court is not supposed to do. And the visual similarities, he, I think, overlooked some key facts in terms of the flames that are used. He also did not look at the word marks. He looked only at the logos. And what's important about that is that both parties use the trademarks without logos. And more importantly, this case came in, started in the Trademark Trial and Appeal Board. We petitioned to cancel Jada's registration, which was a block letter registration. So to completely ignore that was improper, in our opinion. The other issue, so I think that it's reversible error just by going on that one factor alone. And that permeated every single claim. He used the analysis for similarity of the trademarks to find no copyright infringement. And that's a different test than copyright infringement. Same thing with dilution. Didn't go through the other elements. The district court said that if it's not an identical mark or virtually identical mark, that's it, no dilution. And that's not the standard. What he's talking about is actual dilution, which was the test when this case was decided. The standard now for dilution, federal dilution, as of October 06 is likelihood of dilution. And he ignored the survey that showed an association with that dilution claim. But going back to the trademark issues, you can reverse based on that point alone, is that he didn't go through all the sleek craft factors. And it's incumbent upon the district court, Ninth Circuit law, that he do that. And he did not. That's your strongest argument. I think it is. Definitely. Then if we go to the other factors, if we look at the other factors that were ignored, this was all undisputed evidence that Mattel submitted to show that those factors supported Mattel's position that liability should be established for infringement of the Hot Wheels trademarks. We have unbelievable evidence of strength and fame. We gave you the 20, I think it's 28, I don't remember the rule, F, the supplemental case, where the same evidence that we used in front of the board recently, the board being the Trademark Toronto Appeal Board, showed strength of Hot Wheels. 28J. 28J. There you go. Sorry. We hear that all the time. Okay, good. It's like me with my TTAV, I guess. And in terms of the relatedness of the products, I think that Jada is sort of wants it both ways. On one hand, they say that when it came to the old school side of the case, oh, it's directly competitive products because it's toy cars. And when it comes to this third-party use, which they didn't prove, by the way, all they had was six registrations from the Patent and Trademark Office website, and those were for any kind of toy vehicle. That is enough to show dilution of the Hot Wheels brand. But then they parse it out and say, well, because we really sell toy trucks, and you only sell a few toy trucks and mostly cars, then it's not related products. It's not that narrow of a distinction or test to meet to show relatedness. It really isn't. It needs to be in the same category, and clearly toy vehicles are toy vehicles. Jada itself described itself in its brief as selling toy vehicles, toy trucks. That's what they do, vehicles. That's right in Mattel's wheelhouse of the types of products that they sell under the Hot Wheels brand. Marketing channels, clearly we submitted evidence that there was an overlap in that. Mattel's may be broader, but that subsumes Jada's market, and Jada sells to distributors. Jada doesn't know where those products are going to end up. They're going to end up in wherever those distributors sell those to mom and pops or if they sell to regular retailers. It's going to include where Mattel's toy vehicles are also sold. The actual confusion, and this is another point where I think that you can reverse as well, is under Thane, a Ninth Circuit case, if we have evidence of actual confusion in the form of a survey, which we did, we had two, you cannot grant summary judgment to the movement. Counsel, how strong must that evidence be of actual confusion? What percentage? There were two. On the word mark, it was a 28% confusion rate, and on the packaging survey, it was a 7%. Those are with the controls considered. Without the controls is about, I think it was 15% on the packaging and about 44% on the word. What does our case law dictate? With controls or without controls? There's not been a clear decision on that, and what's interesting about it is the cases that the plaintiff, yeah, I guess Jada was the plaintiff in this case, that Jada relied upon, it's not clear from those cases. If you're under 10%, if the controls are added or subtracted. Okay, right. If the controls are subtracted in this case, it's a little weaker. Only for the packaging. Right. The word mark is high. No matter how you slice it, a 28 or 44, whatever it is, that's a very high percentage. I was like, what's the threshold? That's considered strong? Right, and there's been no Ninth Circuit case that comes down and says, if you don't have 10% or more, there's no confusion. What's the smallest percentage that's been used to substantiate confusion in the Ninth Circuit? That I do not know. I know that there's no per se rule as to what that is, but I do not know what the lowest has been used. And, obviously, you're going to look at the other factors as well. Let's say, for example, you have a survey, and only one survey, and it's 8%, but you have strong evidence of intent. That intent should carry the day because you get a presumption at that point that there's a likelihood of confusion. Someone's going to succeed at what they do. Right, but you had previously made the statement that if there's evidence of confusion, that you cannot grant summary judgment. So that's why I was asking you what level of confusion must be shown to trigger that standard that you articulated. In the Thane case in particular, the one that I'm relying upon, it was 27.5% confusion rate shown by the survey. And that's almost identical to what we have in our Wordmark survey here, is 28%. But not the packaging. Right, exactly. And the packaging, which is probably the reason why I wanted to show it to you, it has a lot of other things on it, and it was a difficult thing to test. But what's interesting to note about the packaging is that nowhere on Jada's packaging does Mattel's name appear. But half the number of respondents who identified Jada in response to the survey questions also identified Mattel as putting out the product. And Mattel's name wasn't on it. There was the association with Mattel with Jada's packaging. I think that's a very important fact, both in the dilution and the infringement. What was that percentage? I don't know what the numbers were. It was 50%. So X number of people associated that packaging with Jada, 50% of that X number associated. If that's two people, that's only one. No, no, I understand. It's in the record, and I apologize. I don't have that on my fingertips. The other point that I wanted to make is that Jada raises an issue on appeal in terms of the use of its housemark. That was not brought before the district court, and there was no evidence to show that people even recognized the housemark of Jada. In fact, the packaging survey cuts the other way, that half the number of people were identifying Mattel, and Mattel wasn't even on the packaging. And the packaging, I think you will see in the excerpts of record, there's a very large use of Peterbilt, which I think is the licensor, because these are just trucks, like big rig trucks, smaller versions of big rig trucks. So that's why they had that all over the packaging. So that was not argued below. It was brought before. No evidence to support it in terms of what the impact of that housemark was. And suffice to say, I think the evidence goes the other way. Another point that Jada raises without any evidence is that the consumers are somehow sophisticated because they're collectors, and the evidence was quite the contrary. We're talking about kids. The evidence identified children who bought the products. Not only kids, though, to be fair. It wasn't just kids. It was parents. Right, right. But there was no evidence that this is a collectible, and it's sought out by people that are buying off eBay and they're discriminating consumers. In fact, the price point shows that these are not products that you're going to spend a lot of time purchasing. The price ranges from, you know, 98 cents up to $30 or so. It just depends on that continuum how discriminating the purchaser would be. Right. But the point being that there's no evidence to show what that discrimination, discriminating nature of those customers would be. It's just an argument that has been made. And I think that by price and the evidence that we showed in the record, it's actually the opposite, that these are the types of customers that are not going to spend a lot of time looking at the trademarks and trying to decipher who's who. And the one thing the district court also didn't do was the doubt should be resolved in Mattel's favor, as the prior user and federal registrant, and it was not. In terms of the copyright, we touched a little bit upon it, is that it is a situation where the district court just applied completely the wrong test. And used for the intrinsic test, used the similarity that he used in the trademark analysis, and also appears to have used it for the intrinsic test. And that's not right. He also used the standard in visual works versus artwork and graphic works, which is the association of the text, the artwork, the words, and the relationship of all that. There was also an undeniable point of access here. The person who designed the Hot Rigs logo was a former Mattel employee who worked in the Hot Wheels division. The owner of the company who I deposed, May Lee, said, of course, everyone knows Hot Wheels. If you have a kid, you know Hot Wheels. And the Ninth Circuit in Shaw said, if you have clear and convincing evidence of access, the amount of proof to show substantial similarity is lower. And that was just all that was overlooked. The copyright claim and the dilution claims were all swept into the trademark claim, and we think that was error. I'm going to reserve the rest of my time for remarks. All right. Good morning, Your Honors. Adam Fox on behalf of Data Toys. Let me begin just by proposing that Data Toys is not running away from the other sleep craft factors. We can address those factors. This Court can address those factors if it wishes. They should have been, I believe, they should have been addressed by the trial court. You just can't just look at something and say, well, it's similar or dissimilar, and therefore there's not going to be any confusion as to source. I mean, if I went in and I had a young grandkid that wanted and gave me a description of a toy and even a name, and I went into, like Toys R Us, where they've got them all stacked up there, and then you just see the flame and then you see the word hot, and, you know, that's what they want. You can grab it thinking you're getting the other company's product. So you have to go through those sleep craft factors. Well, Your Honor. I wasn't done here. I have two responses to that. First, the cases are legion throughout the Ninth Circuit that the sleep craft factors are not some sort of mechanical test. We know that, but you don't have to hit on each one. But you do need to go through that analysis. Well, in fact, Your Honor. Do we have any other Ninth Circuit cases where a court can just look at two products and say, well, they're dissimilar, so that ends it? Yes. In fact, we do. There is a case that was not cited in any of the briefs, and I think it's because it predates sleep craft. But, in fact, when sleep craft sets out the eight factors that it suggests courts should look to, it cites to this case. And that case is Sleeper Lounge Company against Bell. No, but that case preceded sleep craft. But it doesn't change the rule. Sleep craft in articulating. Sleep craft tells you what the steps you need to go through in order to make the decision. Your Honor, actually what sleep craft does is it specifically enumerates the factors that are addressed in the sleeper lounge case. And the language from the sleeper lounge case at 253 Fed Second 720, specifically at pages 722 to 723, says it is true that the question of any likelihood of confusion or mistake depends on many factors, including the type of product involved, the manner of distribution of the product, the market for the product, the product's function, and the similarity between the registered marks and the alleged infringing word or phrase. The court goes on to say, but the latter, that is, the similarity of the registered marks and the alleged infringing word or phrase, is the one essential feature, without which the others have no probative value. And in fact, in that case, the court looked at the wonder chair versus wonder bed marks. That was the case that preceded sleep craft. Yes. But sleep craft did not change that rule. That opinion, that ruling has never been overturned, remains the law of the circuit. All that sleep craft really contributed was a specific enumeration of factors that it was suggesting courts should look at. And subsequent to that, other Ninth Circuit cases. Yes, but this court didn't look at those other factors. Because they're not required. Sleep craft doesn't require them. Brookfield Com doesn't require them. Eclipse Associates doesn't require them. And the first case to really argue. What do you mean sleep craft doesn't require them? It's not required. As Your Honor agreed just a few moments ago, a subset of factors can be looked to. They don't all need to be looked at. In fact, only one needs to be looked at. Because without having the similarity. But you've got to go through the analysis. Pardon me? You have to go through the analysis. Well, if there is no similarity, then the other factors have no probative value. Well, you know, what you're doing is then these issues are usually go to a trier of fact. And you're having the court here just look at one factor. And then making the decision. That's what you're doing. Yes. And you're supposed to look at all the other factors. And not too many of these cases are decided on summarily. Just by the judge looking. Say, yeah, I see this, I see that. Yeah, there's enough dissimilarity so we don't have to do any more. You know, it all depends on the market. It all depends on how the product is sold. It depends on who the purchasers are. I mean, I know I've gone in places thinking I'm buying one thing. And even taking it home. And then looking at it and it's a different product. Because they look the same. Understood, Your Honor. And notwithstanding the fact that I have a different view and understanding of what these cases say than Your Honor does. Well, you're a very careful purchaser. You research everything. What if you have a judge that thinks one thing and a compelling survey that says another? You never get to the survey? Is that what you're saying? I think that actually it's a very good question. Because in Sleeper Lounge there was no evidence of a survey. And the court, in noting that there was no similarity, said, there isn't any evidence here of actual confusion. I mean, one of the things. Well, then the court did look at a different factor other than similarity. Even though it articulated, perhaps, that if there's no similarity there is no viable claim. By your own concession, the court did at least look at one other factor. It's a matter of perspective, Your Honor. What some of the other circuits that have done that have said you can rest it on just this single issue, such as the Federal Circuit and the Kellogg case, what they have said is that really all of these factors are different perspectives, different ways of looking at the same issue. And the reason why you may choose to move on to the other issues is if there's some question, some doubt about the single issue that you've looked at so far. But the key issue is really similarity. And so, Judge Sandoval, in response to your question, going back to your question, similarity, if there's no evidence of similarity by the judge, but there is presented compelling evidence of a consumer survey, then that surely would be something that would be important. But I think that in this case here, we don't, you know, judges don't always spell out every single reason why they are ruling in a certain way. And if someone says, if a judge says that there is no evidence of similarity here, then I think we have to go back to something that you said, Judge Rawlinson, in the previous argument, which is we have to adopt the presumption of judicial regularity. And that is, we are going to presume that unless there's something in the evidence, in the record, to the contrary, that the judge has done what they'd like. But there is evidence in the record to the contrary. There's evidence of other factors that raise material issues of fact. Your Honor, I don't believe that's accurate in this case and on this record. For example, if we go to the interest of Judge Sandoval here, and that is the evidence of actual confusion, in fact, in the excerpts of record at page 227 and 228, Mattel admitted that there had never been, in the three years that the products were competing against one another, there had never been any actual consumer confusion. And if we look to the survey, the word marks is a completely inappropriate test, because as the cases throughout this circuit have said again and again, the marks must be considered in their entirety and as they appear in the marketplace. There's no evidence in the record to say that they appear just as words in the marketplace on the products as they're being sold. So that higher survey result should be completely discounted. As for the lower survey result of net 7 percent, that as was pointed out at the excerpts of record 1016 through 1017, in a declaration provided by Jada Toys' expert, there was a 4.5 percent margin of error there because the sample was so small. So not only is it 7 percent, but it could very well be lower than that. Well, that's something that prior fact would have to resolve. But that's something also that as a matter of law can be resolved, although I can't point out for the court in response to your earlier question about what the Ninth Circuit has said the absolute bottom line is. The leading treatise on the subject, McCarthy on Trademarks, has said that no case has found actual confusion with a consumer survey of less than 10 percent. Ten percent or more is required. In this case, we don't even meet that threshold. Counsel, when I was writing the survivor opinion, I had the occasion to do a survey of the Ninth Circuit precedent on this. And it appears that our, you know, our trend is that all of the factors need to be considered. You don't do a numerical weighing, you have four this way, three this way, and one neutral, and so you come up with a mathematical equation. But I think our case is trend toward consideration of all the factors, and then once you've considered them all, there is no obligation to do a mathematical accounting. But you still have to look at all of them before coming to a resolution as to whether or not as a matter of law there's a question of fact. I agree that that is absolutely the case when that first and most important factor upon which the probative value of all the others rests, the similarity of the marks, is found. If the trial judge says, or the district judge in the event of no trial, says these are similar, these appear similar, that judge is directed by Ninth Circuit law to go on and look at the other factors because similarity alone is not going to be enough to have a trademark infringement. However, the obverse is not necessarily true. What I would say to that is if there is no similarity apparent, if the similarity is not substantial, cannot be said, and that's an issue that can be treated as a matter of law and has been. We cited the cases from this circuit in our briefs that say it has been resolved on summary judgment. If that is not found, you need not go to the other factors. Now, what case post-Sleekcraft says that? What case post-Sleekcraft says if you find dissimilarity, there is no need to go further? In this circuit. In this circuit, there is not a case that has made that precise holding. There are several cases that have said you can look at only a subset of factors. But admittedly, in this circuit, there has not been a case that says we will address this one factor similarity alone and not even look at the others. It is the practice. You're absolutely right, Your Honor, to look at other factors. But it is not necessary. And the courts have said in the Ninth Circuit that we should not adopt a rigid mechanical rule. I don't disagree with that. But that's a long way from saying you look at one factor, and if that one factor in your view is dispositive, you don't look at the other factors. Those are two different, vastly different concepts, in my view. And why should there be a difference? Why should you, when you're finding dissimilar, not have to go through the other Sleek factors? But if they are similar, you do. Well, for example, if marks are completely dissimilar, then it doesn't really matter how strong one of the marks is or how related the goods are. Because if the marks are completely dissimilar, then there's no infringement of the trademark. The trademark itself is... But these marks are not completely dissimilar. Pardon me? These marks are not completely dissimilar. The marks are not completely dissimilar. However, what Mattel is arguing... You've got the word hot there. You've got the flames coming out. But what's critical is Ninth Circuit law teaches that we cannot isolate certain fragments of the mark and then compare those. That disregards the role that marks have to be considered in their entirety.  Yeah, in their entirety. Right. Yeah, in the context in which they're sold to and all these other factors. These are hard cases. Absolutely. Absolutely. Many of them are hard cases, but not all of them are. And this one was found that because of differences in the font, one whimsical and slanted, the other in sleek block lettering, the words are different. The Chisborough case said that even if pronunciation or the spelling of words is different, that can be sufficient. But reasonable minds could differ. That's the problem I have with this. Reasonable minds could differ on this. If they had been a different judge, the outcome could have been different because it's not so different that no one could say these are similar. That's the problem I have with this because you have some elements of similarity, and I have a difficulty saying as a matter of law, as a matter of law, these are so dissimilar that we don't go any further in the analysis. But then this court is free to look at the record and look at the admission that there's been no actual confusion in the marketplace that Mattel made. But that's a different factor. That's right. But this court, as an alternative grounds for affirmance, which is always entitled on issues matter of law that you're reviewing de novo, you can look at that and consider that. And we're looking for summary judgment. So we're looking for whether or not there's a material issue of fact on these factors, right? And there is. We're not the jury either. Absolutely. Yeah. Absolutely. But this is an issue that can be resolved as a matter of law if there is no material issue of fact. And there is none here. There is none because the marks are substantially different, right? There are certain similarities which, if in isolation compared, can say, yes, those are similar. Do you want us to go through the sleek craft factors, is that what you're saying? I think that it would probably be most appropriate for the district judge to do so if it's But this court also, if it wants to, has that right. It's a matter of law de novo. It can be reviewed de novo. All right. Thanks. Any rebuttal? Tell me what you're going to rebut. Important one really fast is Mr. Fox said that in terms of the use in the marketplace, there was no evidence in the record that Jada used hot rigs without the flame logo. And that's not true. On page 11 of Jada's brief, it states from August 2001 to August 2004, Jada used its hot rigs trademark alone and as part of the hot rigs logo. And then it gives a site. And the products themselves show that it's used alone as well. So I wanted to rebut that. The other point is in terms of actual confusion, three years is minimal. I mean, that's really nothing. And it's difficult to have empirical evidence of actual confusion. People are busy. They're not going to spend their time calling Mattel to say there's been confusion. They're going to take their kids to soccer or whatever. They may not know. Maybe they're not just pregnant so they get the wrong thing and you're happy with it. Right, exactly. Yeah, exactly. I'm happy with everything. In terms of sleeper lounge, I was handed this case this morning by Mr. Fox, so I apologize that I don't have it cold. But not only did it precede sleep craft, it looks like it may have been under the old trademark act because the registration issued in 1940, Lanham Act was 1946 or 47. So I'm not sure what law that was decided under. And the other thing in that case, the Ninth Circuit did look at other factors or the absence of evidence of those factors. It said there was no actual confusion. All he had, all the judge had in that situation was looking at the similarities of the marks. So I don't think that this case is controlling for many reasons. And I think ultimately that language that Mr. Fox quoted goes to the weight of the factors. Last point. I know you guys have been up there for a while and probably tired and want to go to lunch. There is not a circuit. No, we don't eat. And we don't sleep. Well, glad I have everything to look forward to then as I progress in my career. There's not a circuit. I don't even feel sleep. There's definitely not a circuit split in this. The Federal Circuit in the Kellogg's case examined all of the factors. In fact, what they were talking about was the weight of the factor, and that's what Brookfield had talked a little bit about that as well, that it's dispositive in that it is an important factor. But there's definitely not a split. And the Federal Circuit in the Nautilus case noted the Ninth Circuit rule that it's incumbent upon the district court to go through all the factors. Are you asking for a remand? I'm asking two things. I would prefer to have judgment on liability established for Mattel, and I know that you can do that. But either way it has to go back because if liability is established at the circuit level, we still have a damages case and we still have the copyright case. We didn't file a motion for summary judgment on our copyright claim, so we think there are factual issues as to that. So as a practical matter, if it has to go back to the district court anyway, it may as well go back to the district court on remand to apply all of the factors and then have a clean slate to adjudicate this case. I think that is the simplest. Obviously my preference is to have liability, but that would be the simplest, of course. Well, don't push too hard. Well, you know. Thank you. If there's anything else, I submit. Thank you very much. Court will recess until 9 a.m. tomorrow morning.
judges: Pregerson, Rawlinson, Sandoval